**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

JIMMY DALE BUMGARDNER,
ADC #103669                                                          PLAINTIFF

v.                              5:08-cv-00321-DPM-JTK

LARRY NORRIS, et al.                                            DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge D. P. Marshall Jr.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District
        Judge (if such a hearing is granted) was not offered at the
        hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the
        hearing before the District Judge in the form of an offer of
        proof, and a copy, or the original, of any documentary or
        other non-testimonial evidence desired to be introduced at
        the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary

hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

        Clerk, United States District Court
        Eastern District of Arkansas
        600 West Capitol Avenue, Suite A149
        Little Rock, AR 72201-3325

## **DISPOSITION**

## I.      **Introduction**

This matter is before the Court on the Defendants' Motions for Summary Judgment (Doc.

Nos. 146, 149).   Plaintiff filed a Response to the Motions (Doc. No. 156), and Defendants filed a

Supplemental Motion for Summary Judgment (Doc. No. 159).

Plaintiff Bumgardner is a state inmate incarcerated at the Tucker Unit of the Arkansas Department of Correction (ADC).  He filed this action pro se,[1] pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious dental needs because of Defendants' refusal to provide him with implants and/or jaw reconstruction.  Defendants are Larry Norris, former Director of the ADC; Wendy Kelley, Deputy Director for Health and Correctional Programs at the ADC; Correctional Medical Services, Inc. (CMS), which contracts for the medical care of ADC inmates; and Drs. Richard A. Carpenter and Johnny Canady, who contracted as dentists with CMS to provide dental services to the ADC inmates.  Plaintiff asks for monetary and injunctive relief from Defendants.

## II.    Summary Judgment Motion

### A.    ADC Defendants' Motion (Doc. No. 146)

In support of their Motion, Defendants Larry Norris and Wendy Kelley state Plaintiff's Complaint against them should be dismissed for the following reasons: 1) Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e; 2) Plaintiff's allegations against them are based on their supervisory positions, and

---

[1]By Order dated July 8, 2009, this Court determined that counsel should be appointed to represent Plaintiff (Doc. No. 68).  During the course of this litigation, the Court appointed at least 10 different attorneys to represent Plaintiff.  All these attorneys were permitted to withdraw due to conflicts of interests, satisfaction of pro bono requirements or because they believed Plaintiff's claims to be non-meritorious.  By Order dated August 31, 2010, the Court granted the motion to withdraw by the last appointed attorney and determined Plaintiff could proceed pro se until further notice from the Court (Doc. No. 126).

respondeat superior liability is not applicable to claims filed pursuant to § 1983; 3) Defendants are protected from liability in their individual capacities by qualified immunity.  Defendants also state sovereign immunity protects them from official capacity liability for  monetary damages.

### B.    CMS Defendants' Motion (Doc. No. 149)

Defendants CMS, Canady, and Carpenter move for summary judgment for the following reasons: 1) Plaintiff failed to exhaust his administrative remedies with respect to Defendants CMS and Carpenter; 2) Plaintiff fails to support his claim of deliberate indifference against Defendants, and his argument appears to be a disagreement over the type of medical care and treatment he received, which cannot support a finding of liability; 3) Plaintiff fails to provide proof that dental implants or jaw reconstruction constitutes an objectively serious medical need.

### C.    Plaintiff's Response (Doc. No. 156)

In his Response, Plaintiff states a serious medical factual dispute exists concerning whether Defendants provided him needed dental care and treatment, so as to render summary judgment improper.  He states he completed the grievance procedure concerning this issue, and notes Defendants provided a copy of the grievance to the Court.  He denies Defendants are entitled to qualified immunity, because they violated his constitutional rights by failing to adequately treat his serious dental problem, and he faces substantial harm if his problems are not corrected.  Finally, Plaintiff refers to a dental report by Dr. Jessica Jackson, D.D.S., dated December 1, 2010, in which the doctor stated Plaintiff's rpd's (partial dentures) are ill fitting, that Plaintiff's remaining teeth are stable, but that the ability of remaining teeth to successfully support partials is questionable.

Plaintiff states Defendants did not submit this report, and their failure to do so should render summary judgment improper.

D.     **Defendants' Supplemental Motion for Summary Judgment (Doc. No. 159)**

Defendants filed this Supplemental Motion in response to this Court's January 25, 2011 Order requesting a copy of the report referred to by Plaintiff, reflecting an examination by Dr. Jessica Jackson.  In the Supplemental Motion, Defendants submit a copy of the report indicating that Dr. Jackson examined Plaintiff on December 2, 2010, at the request of the dental director, and found that his partials are ill fitting and that he has a "guarded prognosis. Ability of remaining teeth to successfully support partials is questionable." (Doc. No. 159, p. 4).  Defendants note that Dr. Jackson made no recommendations in her report and that the fitting of Plaintiff's partials is not relevant to the claims against Dr. Canady.  Finally, Defendants note that Plaintiff's requested relief in this action does not include receiving new partials.

E.     **Standard of Review**

Pursuant to FED.R.CIV.P. 56(c), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See  Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other

citations omitted).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'"  Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit."  Id.

    **F.**    **Analysis**

        **1.**    **Exhaustion**

The Court finds Plaintiff failed to exhaust his administrative remedies with respect to his claims against Defendants Norris, Kelley, CMS, and Carpenter, for the following reasons.

According to the PLRA,

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit.  In Booth v. Churner, 532 U.S. 731, 741 (2001), the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."   In addition, "the statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them. [The plaintiff] failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not

place there.'" <u>Chelette v. Harris</u>, 229 F.3d 684, 688 (8th Cir. 2000) (<u>quoting from</u> <u>Castano v.</u>
<u>Nebraska Dep't of Corrections</u>, 201 F.3d 1023, 1025 (8th Cir 2000).   Furthermore, "under the plain
language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in
federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory."
<u>Johnson v. Jones</u>, 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in original). Finally, in <u>Jones v.</u>
<u>Bock</u>, 549 U.S. 199, 218 (2007), the Supreme Court held that while the PLRA itself does not require
that all defendants be specifically named in an administrative grievance, "it is the prison's
requirements, and not the PLRA, that define the boundaries of proper exhaustion."

In addition, the ADC Grievance Policy in effect at the time, Administrative Directive (AD)
07-03, provides that inmates must exhaust their administrative remedies prior to filing a lawsuit, and
that exhaustion occurs by fully appealing a grievance decision to the ADC's Deputy Director for
Health and Correctional Programs. (Doc. No 146-2, pp. 4-29). "Grievances must specifically name
each individual involved for a proper investigation and response to be completed by ADC. Inmates
must fully exhaust the grievance prior to filing a lawsuit." AD 07-03, Sect. IV.C.4. In addition,
section IV.N, entitled "Prison Litigation Reform Act Notice," further explains that the PLRA
requires exhaustion "as to all defendants at all levels of the grievance procedure before filing a
Section 1983 lawsuit." (Doc. No. 146-2, p. 16).

In this case, Plaintiff does not dispute that he filed and fully exhausted only one grievance
complaining about the lack of implants and appropriate dental care and treatment. According to
Charlotte Gardner, the Medical Grievance Investigator for the ADC, Plaintiff filed grievance VU-
08-00516 on July 31, 2008, complaining about his partial dentures and his difficulty with eating.
(Doc. No. 146-2). In that grievance, Plaintiff alleges "the Dentist" recently told him that nothing

would be done to correct his on-going problems with the partial dentures and that the lack of care and treatment violates his Eighth Amendment right to be free from cruel and unusual punishment. (Doc. No. 146-1).  Plaintiff later identified the dentist in his deposition as Defendant Canady, who was the dentist at the Varner Unit where Plaintiff was housed at the time he filed the grievance. (Doc., No. 151-6, p. 4).  Plaintiff does not, however, mention any of the other Defendants in his grievance.

According to the case law as set forth in <u>Jones v. Bock</u>, <u>supra</u>, 549 U.S. at 218, the prison grievance requirements define the boundaries of exhaustion, and in this case, the ADC grievance procedure clearly requires inmates to specifically identify the individuals involved in the grievances. Since Plaintiff clearly failed to identify Defendants Norris, Kelley, CMS and Carpenter in his grievance, these Defendants must be dismissed from his Complaint, for failure to exhaust.  See <u>also</u> <u>Johnson v. Jones</u>, <u>supra</u>.

Finally, although Plaintiff appears to claim that Defendant Kelley should not be dismissed because she signed off on the final appeal of the grievance, the Courts have held that an official's final decision on a grievance appeal "does not ipso facto include them as persons against whom [the inmate] had made grievances."  <u>See</u> <u>Johnson v. Toney</u>, 5:08cv00038-JLH-HLJ, Order dated March 18, 2009, where the Court ruled that the inmate plaintiff failed to exhaust his administrative remedies against Wendy Kelley when he failed to identify her in a grievance separate from the one she signed off on appeal.  The Court also noted that if the plaintiff had named her in a grievance, she would not have been permitted to participate in the final resolution of the grievances, as set forth in the grievance policy, Sect. IV.H.5.  "In short, the ADC Inmate Grievance Procedure requires that ADC personnel against whom a grievance is made be identified with specificity, and that same

8

procedure provides a mechanism to make sure that a person against whom a grievance is made is not the final decision maker on that grievance." Id. at p. 3.

### 2.    Eighth Amendment Claim against Defendant Canady

The Court also finds Plaintiff fails to support a claim of deliberate indifference against Defendant Canady.  In order to support a claim for an Eighth Amendment violation, Plaintiff must prove that Defendant was deliberately indifferent to a serious medical need.  Farmer v. Brennan, 511 U.S. 825, 827 (1994).   However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference.  Estelle v. Gamble, 429 U.S. 197 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995).  See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment).  Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment."  Long v. Nix, 86 F.3d  761, 765 (8th Cir. 1996).  In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim.  Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995).  Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment."  Dulany, supra, 132 F.3d at 1240.

According to Plaintiff's medical/dental records, Defendant Canady treated him on numerous occasions from June 4, 2008 until October 28, 2009 (Doc. No. 151-1).   On only one of those occasions did Plaintiff specifically request he be provided with new teeth (Doc. No. 151-1, p. 35). In response, Defendant Canady noted that both Plaintiff's partial dentures fit reasonably well, and that he had no medical concerns about Plaintiff, because Plaintiff's weight remained stable over a two-year time period.   (Doc. 151-3).   He offered to order a blended diet for Plaintiff and Plaintiff declined.   When Plaintiff asked about implants, Defendant told him the ADC does not offer those services.   Finally, Defendant wrote that "his present state of edentulousness is as good as it gets for him.   He will eventually lose his remaining teeth and need complete dentures which will be an even worse case.   Did explain that teeth are not necessary for nutrition or speech."   (Doc. 151-3, p. 6).

In addition, in his Affidavit, Defendant Canady states he would not recommend surgeries for the top or bottom of the Plaintiff's mouth or for jaw or mouth reconstruction, because there is no way to predict the success of such.   (Doc. No. 151-3, p. 7).   His recommendation to Plaintiff is to use a dental adhesive to keep his lower partial denture in place while eating.   However, if Plaintiff does not want to do that and does not want the suggested blended diet, he can cut his food into tiny bites and eat the soft vegetables and rolls which are served at mealtime.   Finally, Defendant states there is no evidence in the medical records that the requested procedures are medically necessary, and Plaintiff fails to show any harm from the lack of those procedures.   Id.

These conclusions were echoed by Dr. Martin Zoldessy, the Regional Dental Director for CMS, who reviewed Plaintiff's records and also examined him on November 29, 2010 (Doc. No. 151-2).   Zoldessy concluded that nothing in Plaintiff's records substantiated a claim of deliberate indifference to his dental care and that no evidence existed that dental implants or jaw reconstruction

would be medically necessary or even recommended for the Plaintiff. Id.

Plaintiff's subsequent examination by Dr. Jackson does not affect this Court's finding of no deliberate indifference.  While Dr. Jackson concluded that Plaintiff's partials were ill-fitting, this conclusion occurred two years after Plaintiff's last treatment by Dr. Canady.  In addition, Dr. Jackson rendered no conclusions or opinions concerning Plaintiff's requested relief for implants or jaw reconstruction, and made no comments about Plaintiff's prior treatment by any of the prior dentists which would support a finding of deliberate indifference to Plaintiff's serious dental needs.

Having reviewed the record, Plaintiff's dental records, and the other evidence presented, the Court finds Plaintiff does not present evidence to support a finding of deliberate indifference by Defendant Canady.  Rather, Plaintiff shows a disagreement over the method of his treatment by Canady and the other dentists.  The records are clear that from September 5, 2006 until November 29, 2010, Plaintiff received consistent dental treatment from numerous dentists and dental assistants. As stated by the court in Dulany, supra, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." 132 F.3d at 1240.  Therefore, the Court finds Plaintiff's Complaint against Defendants should be dismissed.

## III.    Conclusion

Accordingly,

IT IS, THEREFORE, RECOMMENDED that the Motion for Partial Summary Judgment filed by Defendants Kelley and Norris (Doc. No. 146) be GRANTED.

IT IS FURTHER RECOMMENDED that the Motion and Supplemental Motion for Summary Judgment (Doc. Nos. 149, 159) filed by Defendants Canady, Carpenter and CMS be GRANTED.

IT IS FURTHER RECOMMENDED that Plaintiff's Complaint against Defendants Norris, Kelley, Carpenter, and CMS be DISMISSED without prejudice, for failure to exhaust.

IT IS FURTHER RECOMMENDED that Plaintiff's Complaint against Defendant Canady be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 14th day of February, 2011.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE